The STATE of Ohio, Appellee,

v.

BROWN, Appellant.

[Cite as *State v. Brown* (1995), 108 Ohio App.3d 489.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67653.

Decided Dec. 26, 1995.

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, *David C. Sheldon* and *John W. Monroe,* Assistant Prosecuting Attorneys, for appellee.

*Bruce A. Brown, pro se.*

O'DONNELL, Judge.

Defendant-appellant Bruce Brown appeals jury convictions of forty-four felony charges consisting of ten counts of grand theft, eight counts of forgery, eight counts of uttering, and eighteen counts of tampering with records, and the sentences imposed by the trial judge on those convictions, which were consecutive terms of two years each on the ten theft charges. The remaining counts were determined to be allied offenses of similar import and merged for purposes of imposing sentence.

Appellant attended law school in New York and was licensed to practice law there in 1985. He subsequently moved to Cleveland, Ohio, and in 1991, the state of Ohio prosecuted and convicted him for passing two bad checks in amounts of $1,800 and $500 and for forgery of a power of attorney, and the court incarcerated him for these offenses. While appellant was incarcerated, Naomi Simon, an attorney with the Disciplinary Committee of the First Department in New York City, filed a petition to strike appellant's name as an attorney in the state of New York. The Appellate Division of the Supreme Court for the First Judicial Department issued an order on July 30, 1992 granting the petition and striking appellant's name from the roll of attorneys in the state and commanding appellant to "desist and refrain from the practice of the law in any form" and further stating that appellant was "forbidden to appear as an attorney * * * before any court, judge, justice, board, commission or other public authority." Thereafter, Taffy Campbell, the records officer at the Lima Correctional Institu-

tion, delivered the disbarment notification to appellant while he was confined on the Ohio charges. Upon his release from incarceration, appellant began to practice law in the state of Ohio. The charges involved with this appeal include theft, in that appellant obtained money by deception from various clients whom he claimed to represent; forgery, in that he wrote and signed spurious pleadings on cases and sought admittance to practice *pro hac vice* before different judges when he was not authorized to do so; uttering, in that he submitted those purported pleadings to various courts; and tampering with records, in that these documents were filed in the official court records of those cases.

At trial, ten witnesses testified that they each paid appellant to undertake specific representation. Judge Judith Kilbane Koch testified that appellant represented to her that he was in good standing in New York and was applying for Ohio bar admission. Upon investigation to verify these statements, the judge learned that appellant had not applied for Ohio bar admission and had been disbarred in the state of New York. Judge Thomas Pokorny testified that appellant had appeared in his courtroom in connection with two criminal cases, *State v. Mason* and the *State v. Ehlert*. Also, Judge Stuart A. Saferin testified that appellant had represented himself as a licensed New York attorney seeking to practice *pro hac vice* in Ohio in the case of the *State v. Bowie*. Judge Saferin granted the motion permitting appellant to represent Bowie and accepted Bowie's criminal plea of guilty but later discovered that appellant had been disbarred and was, therefore, unable to practice in Ohio. As a result, Judge Saferin was forced to vacate Bowie's plea and assign new counsel to represent Bowie.

The defense presented Anthony Buchner, an individual formerly represented by appellant, who at the time of testimony was serving a three- to ten-year sentence for drug trafficking at Lima Correctional Institution and who testified about procedures used there for inmates to receive mail. Also, the appellant, a graduate of University School, Brown University, and Columbia University Law School, and a research employee at the Cleveland firm of Jones, Day, Reavis and Pogue, testified that while at Lima, he had not received the order of disbarment from Campbell and that he had received a certificate of good standing from the New York Supreme Court and admitted that he knew it was against the law to practice law without authorization.

Following trial, appellant was incarcerated and now appeals, raising five assignments of error for review.

I

"The state erroneously indicted the appellant under R.C. § 2913.02 rather than R.C. § 4705.07."

■ Appellant here argues that R.C. 4705.07 relates specifically to false representation as an attorney and precludes criminal prosecution pursuant to R.C. 2913.02, theft.

Specifically, R.C. 4705.07 states:

"No person who is not regularly licensed to practice law in this state shall hold himself out in any manner as an attorney at law or shall represent himself * * * as authorized to practice law. * * *"

The penalty for violating this code section is a fine ranging between $25 and $500. Appellant argues that because this section specifically describes the conduct in which he engaged, the state is precluded from charging criminal activity under other sections of the criminal code.

The state argues that the appellant has waived his right to present this argument, since it is now being raised for the first time on appeal, and the prosecutor may exercise discretion as to what charges are appropriate.

We begin our analysis by examining R.C. 1.51 to assist in resolution of this question involving statutory construction. It states:

"If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the *conflict* between the provisions is *irreconcilable*, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail." (Emphasis added.)

The Ohio Supreme Court has considered a similar question in *State v. Volpe* (1988), 38 Ohio St.3d 191, 527 N.E.2d 818, paragraph two of the syllabus, and held:

"Because R.C. 2915.02(A)(5) clearly was enacted to reach criminal possession and control of a gambling device and such conduct is classified as a misdemeanor of the first degree under R.C. 2915.02(F), R.C. 2923.24, a general statute prohibiting possession and control of criminal tools and classifying such conduct as a fourth degree felony, cannot be used to charge and convict a person for possession and control of a gambling device."

In *State v. Chippendale* (1990), 52 Ohio St.3d 118, 120, 556 N.E.2d 1134, 1136, the court considered two offenses with which the defendant was charged, one involuntary manslaughter and the other aggravated vehicular homicide, and offered the following guidance:

"[I]f one of the statutes is general and one specific *and they involve the same or similar offenses,* we must then ask whether the offenses constitute allied offenses of similar import * * *." (Emphasis added.)

Accordingly, our next determination then, pursuant to *State v. Chippendale,* is whether R.C. 2913.02 and R.C. 4705.07 involve the same or similar offenses.

The elements of theft, R.C. 2913.02, as presented by the prosecution in this case, are that appellant knowingly obtained money by deception with the purpose to deprive the owner of that money. These elements differ from false representation as an attorney, R.C. 4705.07, where that statute states, "No person * * * not regularly licensed to practice law in this state shall hold himself out * * * as an attorney at law or represent himself * * * as authorized to practice law."

Because the theft statute includes the additional element of obtaining money by deception, it proscribes conduct which is substantially dissimilar to merely falsely holding oneself out as an attorney, which is the conduct proscribed by R.C. 4705.07. Therefore, under the *Chippendale* standard, these two statutes do not involve the same or similar offenses, they are not allied offenses of similar import, and R.C. 1.51 does not apply to this case.

In reaching this conclusion, we are mindful of *United States v. Batchelder* (1979), 442 U.S. 114, 123–124, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755, 764–765, where the court stated:

"This Court has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants. *Whether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion.*" (Citations omitted; emphasis added.)

For these reasons, we have determined the state did not erroneously indict the appellant under R.C. 2913.02, and we thus find no merit to this assignment of error. Inasmuch as we have reached this conclusion, it is unnecessary to consider the state's argument regarding appellant's waiver of right to raise this issue.

## II

Appellant's second assignment of error charges:

"The trial court erred by allowing an alternate juror to return and deliberate with the remainder of the jury after that juror had been dismissed."

■ Here, appellant complains that the trial judge had dismissed the alternate jurors but, upon excusing one of the deliberating jurors, recalled and permitted the dismissed alternate juror to deliberate and return verdicts in this case. The essence of appellant's position is that a dismissed alternate juror should not be permitted to join deliberating jurors where all are not instructed to begin deliberation anew.

The state urges in its brief that we uphold the action of the trial court because jury deliberations had not begun.

The issue thus presented is whether the trial judge correctly substituted the alternate juror for an excused deliberating juror.

We begin by reviewing Crim.R. 24(F), which states:

"Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. * * * An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict. * * *"

Here, the trial court properly submitted this case to the jury and in doing so excused the alternate jurors. Upon learning the following morning from Franklin Shick, one of the jurors to whom the case had been submitted, that because of a telephone call he had received at his home the previous evening he would no longer be able to be fair and impartial, the trial judge found that jury deliberations had not yet begun and therefore recalled John Jones, the alternate juror, to deliberate the case.

Jones then deliberated the case and returned a verdict that appellant believes violates Crim.R. 24(F).

In *State v. Locklear* (1978), 61 Ohio App.2d 231, 15 O.O.3d 369, 401 N.E.2d 457, the court held, "An alternate juror in a criminal trial, who has been excused, may not be substituted for a regular juror after the jury has retired to consider its verdict." The court noted, "There is no provision for the substitution of a juror by the alternate during the course of deliberations." *Id.* at 233, 15 O.O.3d at 371, 401 N.E.2d at 458.

However, *State v. Miley* (1991), 77 Ohio App.3d 786, 603 N.E.2d 1070, held that substitution of an alternate for a regular juror after a jury has retired to consider its verdict is not *per se* plain error and that reversal is required only where there is some showing of prejudice.

Upon review of the circumstances in the case, where deliberations had not yet begun, we are not persuaded that any prejudice has been demonstrated that would warrant reversal. Finding no prejudice, we find no merit to this assignment of error, and it is overruled.

### III

Appellant's third assignment of error states as follows:

"The trial court erred by not allowing the defense to place defense exhibit into evidence."

Appellant contends that the trial court erred in refusing to allow him to introduce into evidence a copy of the certificate of good standing allegedly issued by the Supreme Court of New York, Appellate Division, on August 19, 1993.

The state urges that the trial court correctly excluded this defense exhibit because appellant failed to properly authenticate the document in accordance with Evid.R. 1003, since appellant never produced the original, and also because it would have been unfair to admit the duplicate showing appellant's good standing in 1993, thereby contradicting evidence of appellant's disbarment in 1992.

The question then presented is whether the copy of the certificate was properly authenticated.

Authentication is governed by Evid.R. 901, which provides as follows:

"(A) General provision.  The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

"(B) Illustrations.  By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

"(1) Testimony of witness with knowledge.  Testimony that a matter is what it is claimed to be.

" * * *

"(7) Public records or reports.  Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation in any form, is from the public office where items of this nature are kept."

Further, Evid.R. 1003 governs admissibility of duplicates and provides as follows:

"A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

Where the opponent raises a genuine issue as to the trustworthiness of the duplicate, the trial court must determine whether the authentication testimony is sufficient to establish that the document is what it purports to be. *State v. Easter* (1991), 75 Ohio App.3d 22, 26–27, 598 N.E.2d 845, 848–849.  Moreover, the trial court's determination of authenticity and its decision whether to admit a duplicate in lieu of an original will not be reversed absent a showing of an abuse

of discretion. *Id.; Natl. City Bank v. Fleming* (1981), 2 Ohio App.3d 50, 57, 2 OBR 57, 63–64, 440 N.E.2d 590, 598.

■ We find no abuse of discretion in this matter. Appellant maintained that he obtained the original certificate from the Supreme Court of New York, Appellate Division, and that after his office was searched in connection with this matter, the original was taken yet not accounted for by police in their inventory of items seized. Further, appellant made no attempt to procure a new certificate. In opposing admission, the state presented evidence that this document was identical to a certificate of good standing which was issued to appellant on November 21, 1990 and demonstrated that the "3" in "1993" appeared to be spurious, since it was not in line with the remaining numerals in the date. Under these circumstances, we find that the state raised a material issue as to the authenticity of the duplicate certificate, which appellant could have dispelled by obtaining a new original. Accordingly, we are unable to conclude that the trial court abused its discretion regarding admissibility of this exhibit.

This assignment of error is therefore overruled.

## IV

Appellant's fourth assignment of error states as follows:

"The verdicts are against the weight of the evidence."

■ Appellant argues that the verdicts are against the manifest weight of evidence because the state failed to produce credible evidence that he had been notified of his New York disbarment by Taffy Campbell and claims that if he held a valid New York license to practice in federal courts, he could have used it for *pro hac vice* application in Ohio.

The state contends that each element of the crimes has been proven by evidence beyond a reasonable doubt.

The issue for consideration then is whether the verdicts of guilty are against the manifest weight of the evidence in this case.

In *State v. Martin* (1983), 20 Ohio App.3d 172, 20 OBR 215, 485 N.E.2d 717, the court stated in paragraph three of the syllabus:

" * * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

Moreover, pursuant to Section 3(B)(3), Article IV of the Ohio Constitution, "[n]o judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the case."

And, in *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, the syllabus of the court states:

"A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt."

Here, the essential elements of the crime of theft are that appellant knowingly obtained control over money by deception with the purpose to deprive the owner of that money. Regarding forgery and uttering, the elements are that appellant, knowing that he was facilitating a fraud, forged a writing so that it purported to be genuine when it was actually spurious or uttered a writing which he knew to have been forged. And finally, regarding tampering with records, the elements are that appellant, knowing he had no privilege to do so, falsified computer data.

Appellant's attack upon Taffy Campbell's credibility is a valid argument, but, upon our review of the transcript and record in this case, we have determined the jury could have rejected her testimony but chose to accept and rely upon it. Furthermore, the prosecution has provided evidence to support each of the elements of the crimes of which appellant has been convicted. Accordingly, we reject this assignment of error.

## V

Appellant's fifth assignment of error states:

"The trial court abused its discretion by imposing a sentence without considering the mitigation factors mandated by R.C. 2929.12."

Appellant contends that the trial judge did not consider the relevant statutory factors listed in R.C. 2929.12, 2929.13 and 2929.14 before imposing sentence. The state responds by urging that the court neither abused its discretion in sentencing the defendant nor ignored the relevant sentencing considerations.

R.C. 2929.13(A) catalogs those factors a trial judge must consider when imposing terms of imprisonment for third or fourth degree felonies with definite sentences. In favor of a short term of incarceration are the following:

"(1) The offense was the result of circumstances unlikely to recur;

"(2) The victim of the offense induced or facilitated it;

"(3) There are substantial grounds tending to excuse or justify the offense, though not sufficient to establish a defense;

"(4) The offender acted under strong provocation;

"(5) The offender has no history of prior delinquency or criminal activity, or has led a law-abiding life for a substantial time before commission of the present offense;

."(6) The offender is likely to respond quickly to correctional or rehabilitative treatment."

R.C. 2929.13(B) should be considered in favor of a longer term of incarceration:

"(1) The defendant, by the duties of his office or by his position, was obliged to prevent the particular offense committed or to bring the offenders committing it to justice;

"(2) The defendant held public office at the time of the offense, and the offense related to the conduct of that office;

"(3) The defendant utilized his professional reputation or position in the community to commit the offense, or to afford him an easier means of committing it, in circumstances where his example probably would influence the conduct of others."

In *State v. Bivens* (1988), 49 Ohio App.3d 75, 550 N.E.2d 497, the court held that a sentencing court is not required to state in the record that it considered the statutory criteria. And in *State v. Cyrus* (1992), 63 Ohio St.3d 164, 166, 586 N.E.2d 94, 96, the court stated:

"This court has held that: 'A silent record raises the presumption that a trial court considered the factors contained in R.C. 2929.12.' *State v. Adams* (1988), 37 Ohio St.3d 295, 525 N.E.2d 1361, paragraph three of the syllabus; accord *State v. O'Dell* (1989), 45 Ohio St.3d 140, 147, 543 N.E.2d 1220, 1227."

The record, however, demonstrates that the trial court specifically considered the appellant's status as a former lawyer and that appellant continued to practice law once released from incarceration, two of the factors specifically mentioned in the statute, and then the court stated, "Applying the criteria for sentencing as set forth in the statutes of the State of Ohio * * *." The above suggests that the experienced trial judge *did* consider all of these relevant factors. Finally, in *State v. Hamann* (1993), 90 Ohio App.3d 654, 630 N.E.2d 384, where the trial court sentenced an attorney, our court rejected similar claims and found no abuse of discretion in imposing sentence where no remorse was shown for the victims.

Based upon the facts presented and our review of the transcript and applicable law, we conclude that the trial court did not abuse its discretion in imposing sentence in this case, and this assignment of error is overruled.

The judgment of the trial court is therefore affirmed.

*Judgment affirmed.*

SPELLACY, P.J., and BLACKMON, J., concur.